**[Cite as *Dolce v. Great Am. Ins. Co.*, 2026-Ohio-2818.]**

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

NICOLINA DOLCE, INDIVIDUALLY, :
AND AS ADMINISTRATIX OF THE
ESTATE OF ROSINA SILVIA :
PIETRANTUONO,

        :

    Plaintiff-Appellant,

        :       No. 115611

    v.

        :

GREAT AMERICAN INSURANCE
COMPANY, ET AL.,         :

    Defendants-Appellees.    :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 23, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-998562

---

## *Appearances:*

Flowers & Grube, Paul W. Flowers, and Michael J. Factor, *for appellant*.

Collins Roche Utley & Garner, LLC and Richard M. Garner; Tressler LLP, Georgia L. Joyce, pro hac vice, and Mark T. Banovetz, pro hac vice, *for appellees* Great American Insurance Company; American Empire Surplus Lines Insurance Company n.k.a. Great American Risk Solutions Surplus Lines Insurance Company.

ANITA LASTER MAYS, J.:

{¶ 1} Plaintiff-appellant Nicolina Dolce ("Dolce"), individually and as administratrix of the estate of Rosina Silvia Pietrantuono, appeals from the judgment of the trial court granting summary judgment in favor of defendants-appellees Great American Insurance Company, Great American Risk Solutions Surplus Lines Insurance Company, formerly known as (f.k.a.) American Empire Surplus Lines Insurance Company ("AESLIC"), and denying Dolce's cross-motion for summary judgment on her supplemental complaint seeking insurance coverage for a default judgment entered against AESLIC's insured Mayfield Heights Healthcare, LLC ("Mayfield"). After a thorough review of the record and applicable law, we affirm.

## I.    Facts and Procedural History

{¶ 2} This appeal arises from the death of Rosina Silvia Pietrantuono ("Rosina") and the subsequent efforts of her daughter, Dolce,  to collect a default judgment from defendant-appellee Great American Risk Solutions Surplus Lines Insurance Company, f.k.a., American Empire Surplus Lines Insurance Company ("AESLIC"), and the related defendant-appellee Great American Insurance Company. AESLIC issued a Healthcare Facilities Liability Insurance Policy, Policy No. PL2666595, to Mayfield as a named insured. The facts giving rise to the underlying tort claim, the multiple lawsuits that followed, and the parties' competing positions on insurance coverage are set forth in detail below.

{¶ 3} On the evening of June 19, 2020, Rosina was found unresponsive in her bed at a short-term rehabilitation facility owned and operated by Mayfield. Rosina had been admitted to the facility for a temporary stay following hip surgery. According to the affidavit of Dolce executed February 19, 2024, and attached to the motion for summary judgment, Rosina was rushed to the emergency room at the Cleveland Clinic Hillcrest Hospital, where it was determined that she had choked on a hot dog provided to her by a Mayfield staff member who had left her unattended. The remainder of the hot dog was found on a plate by her bed. Although emergency personnel succeeded in removing the obstruction from Rosina's throat, she did not recover and died ten days later on June 29, 2020.

{¶ 4} The day after Rosina was found unconscious, Dolce contacted Mayfield supervisor Kelly Wiggins and requested both her mother's medical records and the name of Mayfield's liability carrier. Dolce asserted that she received neither in response to that request. Nine days later, Dolce submitted a complaint regarding her mother's care to the Ohio Department of Health, designated No. OH 00113552. Throughout July 2020, Dolce left messages for and spoke with numerous individuals about the choking incident and continued her efforts to identify Mayfield's liability insurance carrier.

{¶ 5} Dolce retained counsel during this period. On July 9, 2020, counsel issued a litigation hold letter to Mayfield requiring that all correspondence, records, test results, and other evidence pertaining to Rosina be preserved pending a potential lawsuit. A follow-up records request was sent on October 26, 2020,

seeking Rosina's complete chart and file. The October 26, 2020 correspondence advised Mayfield that the requested materials were anticipated to become evidence in a civil action for damages. In December 2020, Dolce was also in contact with a representative of former United States Senator Sherrod Brown's office and with a local news investigator concerning her mother's death and her inability to identify the liability carrier.

{¶ 6} When the requested records were not produced, counsel for Dolce filed a complaint for access to medical records pursuant to R.C. 3701.74(C) in the trial court on November 18, 2020, captioned *Dolce v. Mayfield Hts. Healthcare, LLC*, Cuyahoga C.P. No. CV-20-940412 ("the Records Complaint"). The Records Complaint alleged that Rosina had been residing temporarily at Mayfield's facility, that she had been transported to the hospital, and that numerous attempts to obtain her medical records had been unsuccessful. The clerk's docket reflected that service of the Records Complaint was completed upon Mayfield on November 23, 2020, and again on November 30, 2020.

{¶ 7} Mayfield tendered the Records Complaint to AESLIC Senior Claim Specialist Nicole Daniel ("Daniel") on December 3, 2020. Because the Records Complaint sought only access to medical records and not damages, Mayfield withdrew any claim for liability coverage in connection with that pleading. The Records Complaint was subsequently settled and dismissed with prejudice on June 29, 2021.

{¶ 8} On June 10, 2021, Dolce's counsel sent a letter via certified mail to Mayfield administrator Paul Deutsch ("Deutsch") advising that the potential malpractice action was still being evaluated. Thereafter, on December 3, 2021, Dolce commenced a civil action against Mayfield and others in the trial court, captioned *Dolce v. Mayfield Hts. Healthcare, LLC*, Cuyahoga C.P. No. CV-21-956709 ("the malpractice action"). The complaint in the malpractice action set forth wrongful-death and survivorship claims based upon the alleged negligence of Mayfield's staff and asserted violations of the Ohio Nursing Home Residents' Bill of Rights.

{¶ 9} Mayfield did not file an answer or otherwise appear in the malpractice action. Instead, Mayfield and its parent company, Boulder Operations Holding, LLC ("Boulder"), filed for bankruptcy protection in Delaware, which had the effect of staying the malpractice action. Dolce subsequently filed a motion for relief from the automatic stay in the bankruptcy proceedings, and the parties reached a stipulation permitting her to proceed with the malpractice action against Mayfield, with the understanding that any recovery would be limited to available insurance proceeds. On September 5, 2023, Dolce advised the trial court of these developments. AESLIC was not informed of the malpractice action, the bankruptcy stipulation, or the resumed state-court proceedings.

{¶ 10} Following further proceedings in the malpractice action, the trial court issued a default judgment entry on April 30, 2024, awarding $500,000 in favor of the estate upon the survivorship claim and $2,500,000 for the surviving

family members on the wrongful-death claim, for a total default judgment of $3,000,000 against Mayfield.

{¶ 11} Through her own investigation, Dolce determined that AESLIC had issued liability coverage to Mayfield at the time of Rosina's death and had also insured related Boulder entities. As permitted by R.C. 3929.06, Dolce filed a supplemental complaint against AESLIC, Great American Insurance Company, and Great American Risk Solutions Surplus Lines Insurance Company in the Cuyahoga County Court of Common Pleas on June 7, 2024, captioned *Dolce v. Great Am. Ins. Co.*, Cuyahoga C.P. No. CV-24-998562. The supplemental complaint requested that the insurer be ordered to cover and pay the default judgment up to the available policy limits. AESLIC filed an answer on August 30, 2024, generally denying that coverage was owed and asserting a counterclaim for declaratory relief. Dolce filed a reply to the counterclaim on October 7, 2024, and the parties proceeded with discovery.

{¶ 12} The AESLIC policy at issue was in effect from December 21, 2019, through December 21, 2020. The declarations identified Mayfield as one of several named insured through an endorsement. The policy provided both Commercial General Liability Coverage, designated Coverage A, and Healthcare Facilities Professional Liability Coverage, designated Coverage D. For each of these coverages, the "Each Occurrence Limit" was $1,000,000 and the "General Aggregate Limit" was $3,000,000.

{¶ 13} Coverage A, the Commercial General Liability Coverage part, provided that AESLIC would pay those sums that the insured became legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applied. The policy defined "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Coverage A required that the bodily injury be caused by an "occurrence" within the coverage territory, that it not occur before any applicable retroactive date or after the end of the policy period, and that a claim for damages be first made against any insured during the policy period or any applicable extended reporting period.

{¶ 14} In an endorsement inapplicable to the facts of this case, Coverage A was amended to exclude bodily injury sustained by a "patient or resident" arising from heat, smoke, or fumes from a "hostile fire."

{¶ 15} Coverage D, the Healthcare Facilities Professional Liability Coverage part, obligated AESLIC to pay those sums that the insured became legally obligated to pay as damages because of "bodily injury" to a "patient or resident" caused by an "incident" to which the insurance applied. The policy defined "patient or resident" to include a person under the insured's care who resided in a facility the insured owned, operated, or managed, or who was receiving care or treatment at such a facility when the "incident" occurred. The term "incident" was defined to include any act or omission in the providing of, or failure to provide, services to patients or residents, including the providing or dispensing of food, beverages, medications, or

medical supplies in connection with such services, and the general care, control, supervision, providing, or failure to provide for the safety and security of a patient or resident.

{¶ 16} Coverage D was a "claims made and reported" coverage. It provided that the insurance applied to an injury only if a claim for damages with respect to the injury was first made against any insured and reported to AESLIC during the policy period or any extended reporting period. Section V.3.a. of Coverage D provided for an extended reporting period requiring that a claim be reported not later than 60 days after the end of the policy period, which ended on December 21, 2020. A claim was deemed first made at the earlier of the time notice of the claim was received by any insured and reported to AESLIC in writing or when a claim was made directly to AESLIC in writing.

{¶ 17} In addition, the AESLIC policy contained two reciprocal exclusions at AESLIC 000089 through AESLIC 000091 governing the interaction between Coverage A and Coverage D. Coverage D excluded bodily injury covered under Coverage A of the Commercial General Liability Coverage Form, and Coverage A in turn excluded bodily injury covered under Coverage D of the Healthcare Facilities Professional Liability Coverage part. Both coverages also contained general conditions, including notice requirements and a cooperation provision requiring Mayfield to cooperate with AESLIC in the investigation or settlement of any claim and in the defense against any suit.

**{¶ 18}** In accordance with the trial court's case-management schedule, the parties filed cross-motions for summary judgment on the issue of whether coverage was owed for the default judgment entered in the malpractice action. Dolce filed her motion for summary judgment on May 9, 2025, contending that all of the initial requirements for coverage under Coverage A had been satisfied, that no applicable exclusion barred coverage, and that AESLIC had received sufficient notice of the claim through the various communications and the Records Complaint.

**{¶ 19}** AESLIC filed its own motion for summary judgment on May 9, 2025, arguing that Coverage D was the only potentially applicable coverage, that the Dolce malpractice action had not been made and reported to AESLIC within the policy period or extended reporting period as required by Coverage D, that Mayfield breached the notice and cooperation conditions of the policy, and that AESLIC had been actually prejudiced because the $3,000,000 default judgment had been entered against Mayfield before AESLIC had any knowledge of the malpractice action.

**{¶ 20}** While the cross-motions for summary judgment were pending, Dolce moved for leave to amend her answer to the counterclaim to add the additional affirmative defense of laches on June 2, 2025, and moved separately for leave to amend her answer to add the additional affirmative defense of impossibility of performance on June 13, 2025. AESLIC filed briefs in opposition to both motions on June 9, 2025, and June 26, 2025, respectively, and no replies were filed. On July 31, 2025, the trial court denied both motions for leave to amend, finding that

the motions had been filed approximately one year after the case was initiated, after the close of discovery, and after the parties' cross-motions for summary judgment had been fully briefed. Journal Entry No. 199460248 (July 31, 2025). The trial court further found that Dolce had not pointed to any newly discovered facts to justify the delay and that allowing the amendments would necessitate additional discovery and could affect dispositive motions that had already been fully briefed, thereby prejudicing AESLIC and disserving judicial economy. *Id.*

{¶ 21} On August 25, 2025, the trial court issued a 12-page order and opinion granting summary judgment in favor of AESLIC and against Dolce. Journal Entry No. 199987941 (Aug. 25, 2025). The trial court concluded that Coverage D was the applicable coverage for the underlying healthcare-related claim, that the claim had not been made and reported during the policy period or the extended reporting period as required by Coverage D, and that AESLIC had not received timely notice of the malpractice action. *Id.* The trial court further addressed the reciprocal exclusion located at AESLIC 000091 and concluded that Coverage A did not apply by its own terms. *Id.* The trial court dismissed all of Dolce's claims against all defendants with prejudice.

{¶ 22} Dolce filed a timely notice of appeal on September 22, 2025, and presents a single assignment of error for review challenging the trial court's entry of summary judgment in favor of AESLIC and the denial of her own motion for summary judgment.

## II.    Summary Judgment

{¶ 23} In her sole assignment of error, Dolce contends that the trial court erred as a matter of law by granting summary judgment in favor of AESLIC and by denying her cross-motion for summary judgment.  Dolce argues that the undisputed record demonstrated that she satisfied every prerequisite to coverage under the policy and that AESLIC failed to carry its burden of establishing that any exclusion or condition precluded coverage for the underlying default judgment.

### A. Standard of Review

{¶ 24} "An appellate court reviews a trial court's decision to grant summary judgment de novo."  *U.S. Bank Trust N.A. v. Wittman*, 2025-Ohio-5229, ¶ 18 (8th Dist.), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  "De novo review means that this court independently 'examine[s] the evidence to determine if as a matter of law no genuine issues exist for trial.'"  *Id.*, quoting *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist. 1997).  In other words, we review the trial court's decision without according the trial court any deference.  *Id.*, citing *Smith v. Gold-Kaplan*, 2014-Ohio-1424, ¶ 9 (8th Dist.).

{¶ 25} Under Civ.R. 56(C), summary judgment is appropriate only when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, viewing the evidence most strongly in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the nonmoving party.  The moving party bears the initial burden of identifying the portions of the record that demonstrate the absence of a

genuine issue of material fact, and if that burden is satisfied, the nonmoving party must then set forth specific facts showing a genuine issue for trial. *Dresher v. Burt,* 75 Ohio St.3d 280, 293 (1996).

{¶ 26} Because the construction of an insurance contract presents a question of law, this court likewise reviews the trial court's interpretation of the AESLIC policy de novo. *Smith v. Ohio State Univ.,* 2024-Ohio-764, ¶ 11.

**B. Law and Analysis**

{¶ 27} This appeal arose from a supplemental complaint filed by Dolce under R.C. 3929.06 to subject the proceeds of the AESLIC policy to satisfaction of a $3,000,000 default judgment entered against Mayfield in the underlying malpractice action, Cuyahoga C.P. No. CV-21-956709 (Default Judgment Entry, Apr. 30, 2024). The dispositive question presented was whether AESLIC, as Mayfield's liability insurer, was obligated to indemnify Mayfield for the underlying default judgment under either the Healthcare Facilities Professional Liability Coverage part (Coverage D) or the Commercial General Liability Coverage part (Coverage A) of the policy issued for the period December 21, 2019, through December 21, 2020.

{¶ 28} The trial court granted summary judgment in favor of AESLIC, concluding that AESLIC had no duty to indemnify Mayfield because timely notice of the claim had not been furnished to the insurer. The trial court further concluded that Coverage D, the claims-made-and-reported professional liability coverage, was

the only potentially applicable coverage and that Coverage A, the occurrence-based commercial general liability coverage, did not apply.

{¶ 29} An insurance policy is a contract, and its interpretation is governed by the well-established rules of contract construction. *Emoi Servs., L.L.C. v. Owners Ins. Co.*, 2022-Ohio-4649, ¶ 12. Words and phrases used in an insurance policy must be afforded their plain and ordinary meaning unless another meaning is clearly apparent from the contents of the policy. *Id. See Santiago v. Costanzo*, 2022-Ohio-611, ¶ 18 (8th Dist.). Where provisions of a policy are reasonably susceptible of more than one interpretation, "'they will be construed strictly against the insurer and liberally in favor of the insured.'" *Smith v. Erie Ins. Co.*, 2016-Ohio-7742, ¶ 24, quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus.

{¶ 30} Once an insured establishes that a claim falls within the basic insuring agreement of the policy, the burden shifts to the insurer to demonstrate that an exclusion applies to defeat coverage. *Motorists Mut. Ins. Co. v. Ironics, Inc.*, 2022-Ohio-841, ¶ 9. In other words, "[t]he burden of proving that an exclusion applies is on the insurer." *Id.*, citing *Neal-Pettit v. Lahman*, 2010-Ohio-1829, ¶ 19. To bar coverage, the insurer must show that its proffered interpretation of an exclusion is the only fair construction of the policy language. *Lahman*, at ¶ 12.

{¶ 31} Coverage D of the AESLIC policy is a claims-made-and-reported coverage. By its express terms, Coverage D applies to injury only if "a claim for damages, with respect to the injury, is first made against any insured . . . during the policy period or any Extended Reporting Period." The policy further provides that

a claim is considered first made at the earlier of when notice of the claim is received by any insured and reported to AESLIC in writing or when a claim is made directly to AESLIC in writing. The extended reporting period required that a claim be reported "not later than 60 days after the end of the policy period," that ended on December 21, 2020.

{¶ 32} The undisputed record demonstrated that the Dolce malpractice action was not filed until December 3, 2021, nearly a full year after the policy period expired and well beyond the 60-day extended reporting window. Mayfield did not report the Dolce malpractice action to AESLIC. AESLIC first received notice of the underlying claim only after the default judgment had been entered against Mayfield on April 30, 2024, and after the time for appeal had expired. Indeed, Dolce herself acknowledged in the supplemental complaint that she identified AESLIC as Mayfield's liability carrier only "largely through happenstance" after the default judgment had been entered.

{¶ 33} The notice provided to AESLIC in December 2020 in connection with the Records Complaint did not constitute the reporting of a claim for damages within the meaning of Coverage D. The Records Complaint was a statutory action under R.C. 3701.74(C) to compel production of medical records; it did not seek monetary relief on a theory of negligence and did not allege liability for Rosina's death. As the First District has observed, R.C. 3701.74 "does not provide a cause of action for monetary relief." *Frank v. Univ. of Cincinnati Med. Ctr.*, 2023-Ohio-1255, ¶ 11 (1st Dist.). Moreover, the undisputed record reflected that Mayfield's

representative expressly withdrew any claim for liability coverage in connection with the Records Complaint when it was tendered to AESLIC Senior Claim Specialist Nicole Daniel on December 3, 2020.

{¶ 34} A claims-made-and-reported policy is materially distinct from an occurrence-based policy. Under a claims-made-and-reported policy, the reporting of the claim to the insurer within the policy period (or any extended reporting period) is not merely a condition subsequent to coverage; it is part of the insuring agreement itself and defines the scope of the coverage purchased. *See Shaut v. Natl. Cas. Co.*, 2021-Ohio-2522, ¶ 37, fn. 2 (8th Dist.). For that reason, the prejudice analysis applicable to ordinary notice provisions in occurrence-based policies does not apply where the failure to give notice within the policy period defeats coverage in the first instance. *Bosley v. Associated Paper Stock, Inc.*, 2022-Ohio-2649, ¶ 29, 30 (7th Dist.). Because the Dolce malpractice action was neither first made nor reported to AESLIC during the policy period or the 60-day extended reporting period, the trial court correctly concluded that Coverage D did not afford coverage for the default judgment. To that extent, we determine that the trial court's analysis was sound.

{¶ 35} Dolce argues that, even if Coverage D was unavailable, the Commercial General Liability Coverage of Coverage A should fill the gap and provide indemnity for the underlying default judgment. That argument cannot be reconciled with the structure of the policy. The policy's own terms placed identical "first made" reporting requirements on Coverage A, and the policy further expressly

excluded from Coverage A those bodily-injury claims arising from the rendering of or failure to render professional healthcare services that fall within the scope of Coverage D. The standing of Dolce, as a judgment creditor proceeding under R.C. 3929.06, can rise no higher than the rights of the insured, and the insured's failure to comply with the policy's claim-reporting requirements is equally a defense available to the insurer against the judgment creditor. *Burdette v. Bell*, 2019-Ohio-5035, ¶ 41 (12th Dist.).

{¶ 36} The allegations of the underlying Dolce malpractice action confirmed that the claim sounded in healthcare professional liability rather than in general premises liability. The complaint in Cuyahoga C.P. No. CV-21-956709 alleged that Mayfield's staff negligently provided food to and failed to supervise a resident under its care, resulting in her choking and subsequent death. Such allegations fall squarely within the definition of "incident" under Coverage D, which encompasses "any act or omission in the providing of or failure to provide services to your 'patients or residents,' including . . . [t]he providing or dispensing of food, beverages, medications or medical supplies" and "[t]he general care, control, supervision, providing or failure to provide for the safe[ty] and security of a 'patient or resident'" (AESLIC Policy at AESLIC 000094-000095). Because the underlying claim was, at its core, a professional liability claim, Coverage A's express professional services exclusion barred any alternative path to coverage under the general liability coverage part.

{¶ 37} The court is mindful that exclusions must be strictly construed against the insurer and that the insurer bears the burden of demonstrating their applicability. *Ironics, Inc.*, 2022-Ohio-841, ¶ 9, quoting *Lahman*, 2010-Ohio-1829, at ¶ 19. AESLIC carried that burden here. The policy's professional services exclusion was unambiguous, conspicuously placed, and directly addressed the very conduct alleged in the underlying complaint. The single occurrence at the heart of the underlying judgment — the alleged negligent provision and supervision of food to a resident under Mayfield's care — cannot plausibly be characterized as anything other than the rendering of, or failure to render, professional healthcare services within the meaning of Coverage D.

{¶ 38} The trial court's ultimate conclusion that no coverage was owed under the AESLIC policy was therefore correct, even if the trial court's reasoning rested principally on the broader notice rationale. An appellate court reviewing a grant of summary judgment may affirm on any ground supported by the record. *Williams v. PNC Bank, N.A.*, 2022-Ohio-4287, ¶ 71 (8th Dist.). Because Coverage D was unavailable because of the insured's failure to satisfy the policy's claims-made-and-reported requirements, and because Coverage A was foreclosed both by its own first-made reporting requirement and by its professional services exclusion, AESLIC was entitled to judgment as a matter of law.

{¶ 39} Construing the evidence most strongly in favor of Dolce, as the nonmoving party on AESLIC's motion, no genuine issue of material fact remained on the dispositive coverage questions. We find that the trial court did not err in

granting summary judgment in favor of AESLIC and in denying Dolce's cross-motion for summary judgment.

{¶ 40} Therefore, Dolce's sole assignment of error is overruled.

{¶ 41} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MICHELLE J. SHEEHAN, A.J., and
EILEEN A. GALLAGHER, J., CONCUR